1  GIRARDI | KEESE
   THOMAS V. GIRARDI, SBN 36603
2  tgirardi@girardikeese.com
   GRAHAM B. LIPPSMITH, SBN 221984
3  glippsmith@girardikeese.com
   1126 Wilshire Boulevard
4  Los Angeles, California 90017
   Telephone:  (213) 977-0211
5  Facsimile:   (213) 481-1554

6  Attorneys for Plaintiff

7  UNITED STATES DISTRICT COURT

8  CENTRAL DISTRICT OF CALIFORNIA

9
10 DAVID WEISMAN, an individual,            CASE NO. CV11-6033 GW(JCx)

11         Plaintiff,                        **COMPLAINT FOR DAMAGES**

12 v.                                        COUNTS:

13 SANRIO FAR EAST COMPANY, a                1. COPYRIGHT INFRINGEMENT;
   Japanese corporation; HYSTERIC            2. CONTRIBUTORY INFRINGEMENT;
14 GLAMOUR, a Japanese corporation;          3. VIOLATION OF STATUTORY RIGHT
   HYSTERIC GLAMOUR USA, a                      OF PUBLICITY (Cal. Civ. Code
15 California corporation; MICHAEL              3344.1);
   POST, an individual, and DOES 1           4. DECLARATORY RELIEF
16 through 10, inclusive,
                                             **DEMAND FOR JURY TRIAL**
17         Defendants.

18

19

20                                                                    BY FAX

21

22

23

24

25

26

27

28

                                    1
                                COMPLAINT

# COMPLAINT FOR DAMAGES

## JURISDICTION AND VENUE

1. This action is brought under the federal Copyright Act of 1976, as amended, 17 U.S.C.A. §§ 101 et seq. This Court has jurisdiction pursuant to § 1338(a). This civil action also seeks declaratory relief under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202.

2. This Court also has subject matter jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' claims seeking damages for violations of state law because said claims arise out of the same case or controversy for which, as set forth above, this Court already has proper subject matter jurisdiction.

3. Venue in this judicial district is proper under 28 U.S.C. §§ 1391 (b) and (d) and 1400(a) of the Judicial Code (28 U.S.C.A. §§ 1391(c), 1400(a)).

## THE PARTIES

4. Plaintiff DAVID WEISMAN is now, and at all times mentioned in this complaint was, a citizen of the United States, residing in Los Angeles County, California.

5. Defendant MICHAEL POST ("POST") is now, and at all times mentioned in this complaint was, an individual residing in Santa Barbara County, California.

6. Defendant SANRIO FAR EAST COMPANY LTD. ("SANRIO"), is now, and at all times mentioned in this complaint was, a corporation organized and existing under the laws of Japan.

7. Defendant HYSTERIC GLAMOUR LTD ("HYSTERIC JAPAN"), is now, and at all times mentioned in this complaint was, a corporation organized and existing under the laws of Japan.

8. Defendant HYSTERIC GLAMOUR USA ("HYSTERIC USA"), is now, and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the state of California, with its principal place of business in Los Angeles, California.

9. Plaintiff is informed and believes that SANRIO, HYSTERIC JAPAN, and

1  HYSTERIC USA were and are working in conjunction with respect to the licensing and use of
2  Plaintiff's images. All have engaged in deeds, acts, or conduct to negotiate said licenses and
3  transactions in the state of California through one or more of their officers, directors, agents,
4  employees or representatives.

5      10. Plaintiff is informed and believes that HYSTERIC USA is an agent or representative
6  of HYSTERIC JAPAN doing business in the State of California.

## GENERAL ALLEGATIONS

    11. Prior to July 20, 1972, Plaintiff co-created, co-wrote, co-directed and co-produced an original film, entitled *Ciao! Manhattan*.

    12. *Ciao! Manhattan* ("the Film") is a semi-biographical film centered on the life and experience of actress and model Edith (or Edie) Sedgwick ("Sedgwick"), where Sedgwick plays herself. Production of the Film began in 1967, and it first premiered in Amsterdam July 20, 1972 to critical acclaim. Its star, Sedgwick, tragically died before the Film's completion.

    13. Plaintiff is the sole successor-in-interest of Court Pictures, Inc.

    14. Court Pictures, Inc., and thereby Plaintiff, has been and still is the sole proprietor of all right, title, and interest in and to all copyrights in the Film.

    15. In conjunction with the Film, on December 18, 1970, Sedgwick granted to Plaintiff "all rights, worldwide, in perpetuity, in all media and in all means whether presently known or unknown, to the results and proceeds of [Sedgwick's] services" ("Publicity Rights") in a contract incorporated by this reference. A true and complete copy of the contract is attached as Exhibit A.

    16. Therefore, on December 18, 1970, Plaintiff became, and continues to be, the sole proprietor of all right, title, and interest in the Publicity Rights of Edith Sedgwick.

    17. Plaintiff is informed and believes, and on that basis alleges that Post has claimed 100% rights over the Publicity Rights with direct knowledge that Sedgwick's Publicity Rights belonged to Plaintiff. Plaintiff is informed and believes that POST has been licensing such rights for his own gain since 2006. Specifically, Defendant POST purported to own the rights to Sedgwick's name and likeness when SANRIO, a large Japanese licensor, contacted him, seeking

POST'S permission to license certain photographs of Sedgwick.  Plaintiff was unaware of POST's claims of 100% of the Publicity Rights until November of 2008.

18.	Defendant SANRIO in turn purported to sublicense to Defendant HYSTERIC JAPAN the right to use these photographs on the designer apparel that they manufacture and sell.  Plaintiff became aware of POST'S illegal licensing activities in November, 2008.

19.	After July 20, 1972, HYSTERIC JAPAN and HYSTERIC USA infringed the above mentioned copyright and the above mentioned Publicity Rights by printing images from the copyrighted Film as well as the name and image of Sedgwick on apparel and selling the products in the United States without proper permission or licensing from Plaintiff.

20.	On December 23, 2008, Plaintiff contacted SANRIO regarding his ownership rights in the images from the Film.  Shortly thereafter, a representative of HYSTERIC USA contacted Plaintiff to begin negotiating licenses to several images from the Film.  Before any agreement could be reached, HYSTERIC USA sent Plaintiff a check for $1,000.00 for "photo usage" in hope that Plaintiff would not seek further compensation for the prior and continued impermissible use of his images. Plaintiff did not cash the check.

21.	Plaintiff is informed and believes that Defendants continue to use images of Sedgwick and/or the Film, which belong to Plaintiff, for their own gain.

22.	Plaintiff is informed and believes that Defendant POST continues to assert 100% Successor in Interest Rights in direct conflict with Plaintiff's ownership of the Publicity Rights and continues to profit from licensing Edith Sedgwick's name and images that are the rightful property of Plaintiff.

**FIRST CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 101, et. seq.)**
**(Against all Defendants)**

23.	Plaintiff repeats, alleges and incorporates by reference allegations 1 through 22 as though fully set forth herein.

24.	Plaintiff's above-referenced Film contains a substantial amount of material created

by Plaintiff's own skill, labor, and judgment, and is copyrightable subject matter under the laws of the United States.

25. Plaintiff complied in all respects with the United States Copyright Act of 1976 and all other laws governing copyright by applying for copyright registration of the Film on October 26, 1983; making the required deposit; and receiving from the Register of Copyrights a Certificate of Registration, No. 188-367, dated October 26, 1983.  A true and complete copy of the Copyrights Certificate is attached as Exhibit B and incorporated by this reference.

26. Since July 20, 1972, the Film has been published by Plaintiff, and all copies of it made by Plaintiff, or under his authority or license, have been printed and published in strict conformity with the provisions of the United States Copyright Act of 1976 and all other laws governing copyright.

27. Beginning in or about 2006, Defendants POST, SANRIO, HYSTERIC JAPAN, and HYSTERIC USA deliberately and intentionally licensed and used images from the Film, owned by Plaintiff without Plaintiff's permission and in violation of Plaintiff's copyrights.  Specifically, the infringed images have been printed on designer apparel sold in numerous retail stores and online.

28. Defendants' acts of infringement are willful, in disregard of, and with indifference to the rights of Plaintiff.

29. Defendants have substantially profited from the illegal use of Plaintiff's work.  As a direct and proximate result of the Defendants' infringements, Plaintiff is entitled to damages and to disgorgement of Defendants' profits in amounts to be proven at trial which are not currently ascertainable.

**SECOND CAUSE OF ACTION—CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**(Against All Defendants)**

30. Plaintiff repeats, alleges, and incorporates by reference allegations 1 through 29 as though fully set forth herein.

31. Plaintiff is informed and believes that each Defendant had actual knowledge of Plaintiff's copyright and yet willfully took active steps to entice and induce the direct infringement

of that right.

**THIRD CAUSE OF ACTION—VIOLATIONS OF CALIFORNIA STATUTORY RIGHT OF PUBLICITY – CAL. CIV. CODE § 3344.1**

**(Against All Defendants)**

32. Plaintiff repeats, alleges, and incorporates by reference allegations 1 through 31 as though fully set forth herein.

33. On December 18, 1970, Sedgwick granted to Plaintiff 100% interest in her Publicity Rights. This included all use of her name, likeness, image, and identity for commercial purposes.

34. Plaintiff is informed and believes that in or about 2006, and continuing to this date, Defendants have willfully and knowingly infringed on Plaintiff's Publicity Rights by appropriating the name, likeness, image, and identity of Sedgwick for their own for purposes of advertising or selling, or soliciting purchases of, products, merchandise, and goods.

35. The appropriation was unauthorized and without Plaintiff's consent.

36. The appropriation usurped Plaintiff's ability to control the Publicity Rights and diluted his ability to effectively market such images, all to the detriment of Plaintiff.

37. Plaintiff is informed and believes, and on that basis, alleges that as a proximate result of the advantage accruing to Defendants from said appropriation, Plaintiff has been and/or will be deprived of monetary sums in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION—DECLARATORY RELIEF**

**(Against All Defendants)**

38. Plaintiff repeats, alleges, and incorporates by reference allegations 1 through 38 as though fully set forth herein.

39. A real and justiciable controversy exists between Defendants and Plaintiff regarding the ownership of the Publicity Rights.

40. Despite Sedgwick's execution of a written assignment of all Publicity Rights to Plaintiff, POST has held himself out as the owner of 100% Successor in Interest Rights with regard

to Sedgwick. SANRIO, HYSTERIC JAPAN, and HYSTERIC USA have used, and continue to use, the name and image of Edith Sedgwick in the sale of their products without regard for Plaintiff's ownership interest in those rights.

41. Plaintiff seeks a declaratory judgment from this Court which declares that the Publicity Rights are wholly owned by Plaintiff pursuant to the contract signed by Sedgwick on December 18, 1970.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment and relief as follows:

1. For Defendants' profits to be proven at trial;
2. For general damages to be proven at trial;
3. For special damages to be proven at trial;
4. For punitive damages to be proven at trial;
5. For injunctive relief;
6. For statutory damages;
7. For an accounting to be proven at trial;
8. For prejudgment interest;
9. For attorney's fees;
10. For the costs of this action; and
11. For any further legal and equitable relief the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated:     July 21, 2011                    GIRARDI | KEESE

                                            By: _____
                                                THOMAS V. GIRARDI
                                                GRAHAM B. LIPPSMITH

# EXHIBIT A

RECEIVED
JAN 7 1972
GRIFFITH & THORNBURGH

AGREEMENT made this 18th day of DECEMBER, 1970, between EDITH M. SEDGWICK, of 1917 CASTILLO ST., APT. 8, Santa Barbara, Calif., hereinafter referred to as ARTIST, and COURT PICTURES, INC. and/or DAVID WEISMAN, 336 East 43rd Street, New York, N.Y., hereinafter referred to as PRODUCER, witnesseth:

1. PRODUCER agrees to employ ARTIST, and ARTIST agrees to render services exclusively to PRODUCER, for the period of APPROXIMATELY THREE WEEKS commencing on or about the 18th day of DECEMBER, 1970. Said services to be rendered at such locations and studios as PRODUCER may designate and to consist of the portrayal before the motion picture camera of such characters or roles as the PRODUCER may select for the motion picture production tentatively entitled "CIAO! MANHATTAN."

2. ARTIST agrees that she will, during the term of this contract, hereinafter referred to as TERM, or any extension thereof, devote her services exclusively to PRODUCER, and not engage in any other occupation.

3. ARTIST hereby grants PRODUCER all rights, worldwide, in perpetuity, in all media and in all means whether presently known or unknown, to the results and proceeds of ARTIST'S services, and grants PRODUCER the right to utilize ARTIST'S name, likeness and biography in connection with advertising or publicizing the motion picture "CIAO! MANHATTAN".

4. ARTIST agrees, during the TERM, or any extension thereof, not to permit her name to be used in any manner for commercial purposes without the written consent of PRODUCER.

5. PRODUCER agrees to pay all transportation charges of ARTIST, whenever she is called upon in the course of TERM by PRODUCER to leave the County of Los Angeles.

6. PRODUCER agrees to pay to ARTIST, and ARTIST agrees to accept from PRODUCER, the sum of ONE THOUSAND ($ 1,000.00) DOLLARS for her services herein described, payable according to the SCHEDULE OF PAYMENTS annexed hereto. In case of illness or injury preventing ARTIST from rendering services to PRODUCER during TERM, PRODUCER shall have the right to replace ARTIST without liability for employment or compensation therefor, or PRODUCER may choose to suspend ARTIST'S salary during said period, and in return, ARTIST shall render services for an additional period beyond the TERM, equal to the time she is unable to render services, for the same compensation.

E.M.S.

2.

7. It is agreed that the services of ARTIST are extraordinary and unique, and that there is no adequate remedy at law for a breach of this contract by ARTIST, and that in case of such a breach, PRODUCER shall be entitled to equitable relief by way of injunction or otherwise. If ARTIST fails or refuses to perform for any reason, PRODUCER shall have the right to extend TERM during the period of such non-performance, to terminate this agreement, and to seek injunctive relief in addition to any other remedy PRODUCER may have against ARTIST at law or in equity, and all such remedies shall be cumulative.

8. The TERM hereof shall be extended for any period of force majeure.

9. ARTIST agrees to perform to PRODUCER'S satisfaction all scenes and dialogues, both written and spontaneous, provided to her by PRODUCER. ARTIST shall not maintain any claim of moral rights or that ARTIST'S professional or personal reputation is in anyway damaged or impaired by reason of PRODUCER'S election to exercise its rights under this paragraph.

10. It is agreed that in the event ARTIST is actually engaged in making of said motion picture at the expiration date of TERM or any extension day thereof, and/or in the event ARTIST has not completed any and all performances of services required of her in paragraph 9. above written, TERM of this contract shall automatically be extended for the number of days that ARTIST'S services are required to complete said motion picture. ARTIST shall receive no additional compensation during said extended period.

11. PRODUCER shall have the right but not the obligation to take out cast insurance covering rendition of ARTIST'S services, and ARTIST warrants that she is insurable at usual rates without exclusions, and agrees to submit to the usual examinations.

12. ARTIST agrees that she will not do or commit any act or thing that will bring her into disrepute or ridicule or which shall violate public morals or decency, and if she does so, PRODUCER shall have right to terminate this agreement or remove ARTIST'S name from screen or advertising credit.

13. PRODUCER shall have the right to dub ARTIST'S voice into any foreign language; ARTIST shall be available for dubbing her voice in English after PRODUCER shall give ARTIST three (3) days prior written notice of the date on which PRODUCER wishes to dub ARTIST'S voice into English. PRODUCER has no obligation to use ARTIST'S voice in dubbing ARTIST'S performance, but ARTIST is obliged to be available for dubbing if PRODUCER so elects, for no additional compensation.

3.

14. This agreement shall become binding upon commencement of production of the above-mentioned motion picture, and upon acceptance below of all conditions by both PRODUCER and ARTIST.

AGREED AND ACCEPTED:

_Edith M. Sedgwick_
EDITH M. SEDGWICK

AGREED AND ACCEPTED:

_David Weisman_
DAVID WEISMAN for COURT PICTURES, INC.

# EXHIBIT B

# CERTIFICATE OF COPYRIGHT REGISTRATION

This certificate, issued under the seal of the Copyright Office in accordance with the provisions of section 410(a) of title 17, United States Code, attests that copyright registration has been made for the work identified below. The information in this certificate has been made a part of the Copyright Office records.

*David Ladd*

REGISTER OF COPYRIGHTS
United States of America

**FORM PA**
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**PA 188-367**

☒ PA  ☐ PAU

EFFECTIVE DATE OF REGISTRATION

Month: 10  Day: 26  Year: 83

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1** TITLE OF THIS WORK ▼

CIAO MANHATTAN

PREVIOUS OR ALTERNATIVE TITLES ▼

CIAO! MANHATTAN

NATURE OF THIS WORK ▼ See instructions

Motion Picture

**2** NAME OF AUTHOR ▼

a   Court Pictures, Inc.

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ U.S.A.
     { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼

Entire Work

NAME OF AUTHOR ▼

b

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of country
OR { Citizen of ▶
     { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼

NAME OF AUTHOR ▼

c

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
     { Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?  ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

NATURE OF AUTHORSHIP Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**3** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given in all cases.

1972 ◀ Year

DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.

Month ▶ July   Day ▶ 20   Year ▶ 1972
Amsterdam, The Netherlands ◀ Nation

**4** COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Court Pictures, Inc.
%Sugarloaf Films, INc.
119 N. McCAdden Place, #306
Los ANgeles, CA 90038

APPLICATION RECEIVED
26 OCT 1983

ONE DEPOSIT RECEIVED
OCT. 25, 1983

TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE
21355

TRANSFER If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

Written Agreement

MORE ON BACK ▶

DO NOT WRITE HERE

EXAMINED BY _____   FORM PA

CHECKED BY _____

PA 188-367

☐ CORRESPONDENCE Yes

☐ DEPOSIT ACCOUNT FUNDS USED

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
☐ This is the first published edition of a work previously registered in unpublished form.
☐ This is the first application submitted by this author as copyright claimant.
☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼    Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

b. Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**6**

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼    Account Number ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼
Gail Shatsky, Legal Assistant
Pollock, Bloom and Dekom
9255 Sunset Blvd., 10th Floor
Los Angeles, CA 90069
Area Code & Telephone Number ▶ (213) 278-8622

Be sure to give your daytime phone number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Sugarloaf Films, Inc. (owner of exclusive rights)
Name of author or other copyright claimant, or owner of exclusive rights ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this is a published work, this date must be the same as or later than the date of publication given in space 3.
DAVID WEISMAN                    date ▶ September 14, 1983

Handwritten signature (X) ▼ _[signature]_

MAIL CERTIFICATE TO

Name ▼  Pollock, Bloom and Dekom
Attention: Gail Shatsky
Number/Street/Apartment Number ▼
9255 Sunset Blvd., 10th Floor
City/State/ZIP ▼
Los Angeles, CA 90069

Certificate will be mailed in window envelope.

Have you:
• Completed all necessary spaces?
• Signed your application in space 8?
• Enclosed check or money order for $10 payable to Register of Copyrights?
• Enclosed your deposit material with the application and fee?
MAIL TO: Register of Copyrights, Library of Congress, Washington, D.C. 20559

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.