GIRARDI | KEESE
THOMAS V. GIRARDI, SBN 36603
tgirardi@girardikeese.com
GRAHAM B. LIPPSMITH, SBN 221984
glippsmith@girardikeese.com
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone:  (213) 977-0211
Facsimile:   (213) 481-1554

Attorneys for PLAINTIFF

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEISMAN, an individual,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL POST, an individual, and DOES 1-10,<br><br>　　　　　Defendant.<br><br>MICHAEL POST, an individual<br><br>　　　　　Counterclaimant,<br><br>v.<br><br>DAVID WEISMAN, an individual,<br><br>　　　　　Counter-defendant. | **CASE NO. CV-11-6033-GW (JCx)**<br><br>**Hon. George H. Wu**<br><br>PLAINTIFF DAVID WEISMAN'S MEDIATION BRIEF<br><br>Mediator: Hon. Margaret A. Nagle<br>Location: USDC Temple St., Rm. 580<br>Date:　　June 20, 2013<br>Time:　　10:00 am |

# MEDIATION BRIEF

## I.  INTRODUCTION

This case concerns a dispute between filmmaker Plaintiff David Weisman ("Weisman") and Sedgwick's widower Defendant Michael Post ("Post") over the ownership of Edith Sedgwick's ("Sedgwick") publicity rights.  Through her contract on the film *Ciao! Manhattan* (the "Contract"), Sedgwick assigned all publicity rights to Weisman in connection with the film.  Before the film was completed and released, Sedgwick died.  Post has testified repeatedly that, at the time of her death, Sedgwick's only commercial value was derived from *Ciao! Manhattan*.  Given this statement, the Contract, and the provisions of California Civil Code §3344.1, Sedgwick effectively passed ALL publicity rights to Weisman, who has subsequently developed and promoted the Sedgwick brand with great vigor.  Despite Weisman's ownership of such rights, Post has unlawfully licensed Sedgwick's image to third parties for profit.

## II.  STATEMENT OF FACTS

David Weisman is a filmmaker, author, and graphic artist best known as the sole producer of the Oscar winning film "Kiss of the Spider Woman." (Ex. A)  Weisman began his filmmaking career with *Ciao! Manhattan*, a semi-autobiographical film based on the life of actress and model, Edith Sedgwick, in which Sedgwick plays herself.  (*Id.* at Ex. A, Ex. B, p. 60:1-25, p. 61:1-21).  In December 1970, Weisman and Sedgwick entered a contract in which Sedgwick granted "[Weisman] all rights, worldwide, in perpetuity, in all media and in all means whether presently known or unknown, to the results of proceeds of ARTIST'S [Sedgwick's] services, and grants [Weisman] the right to utilize ARTIST'S [Sedgwick's] name, likeness, and biography in connection with advertising or publicizing the motion picture 'CIAO! MANHATTAN.'" (Ex. E, p. 1, ¶ 3).

In 1969, Michael Post met Sedgwick in a mental health facility in Santa Barbara.  They married on July 24, 1971.  (Ex. C, p. 10:7-25, p. 11:1-3).  Three months later, on the

Case 2:11-cv-06033-GW-JC   Document 105   Filed 06/17/13   Page 3 of 8   Page ID #:1553

night of Sedgwick's death, Sedgwick told Post that she wanted to end their marriage, mentioning another man. That night, Post administered Sedgwick's medications and, in the morning, Sedgwick died intestate. (Ex. F, p. 1247:17-25, p. 1248:1-3, Ex. L, p. 4:24-25).

In July 1972, *Ciao! Manhattan* had its world wide premiere in Amsterdam. (Ex. H). Sedgwick's life story is an integral part of *Ciao! Manhattan*'s visualization, theme, storyline, and dialogue. Many of Sedgwick's life events were depicted in *Ciao! Manhattan*, including all of those events that potentially had commercial value. (Ex. B, p. 60:1-25, p. 61:1-21). Weisman, as author, producer, and creator of *Ciao! Manhattan* owns all copyrightable material arising from and associated with the film. (Ex. I). Weisman registered *Ciao! Manhattan* with the U.S. Copyright Office on October 26, 1983. (*Id.* at Ex. I). In 2006, Weisman authored and became the sole and exclusive owner to the copyrights of the book *Edie: Girl on Fire* which depicts Sedgwick's life through images from *Ciao! Manhattan*, and other pre-*Ciao! Manhattan* images of Sedgwick for which Weisman obtained licenses. (Ex. S).

The entirety of Sedgwick's verifiable commercial value in her name, likeness and biography at the time of her death arose from Sedgwick's participation in and connection with Weisman's *Ciao! Manhattan* film. (Ex. J, p. 13:1-15:7, Ex. K, p. 1185:10-1186:11). For thirty-nine years, Weisman developed and promoted the Sedgwick brand without interruption or protest from anyone, including Post. (Ex. U, p. 98:20-24, p. 1194:1-17).

The probate order disposing of Sedgwick's estate only devised $3,807.73 and sixty-five shares of capital stock of Western Independent Corporation to Post and conspicuously lacked mention of any intellectual property that existed as part of Sedgwick's estate at the time of her death. (Ex. M). At no time did Post attempt to re-open probate to include publicity rights or intellectual property. (Ex. N, p. 16:10-18:13, p. 21:19-23, p. 40:5-44:6, Ex. O, p. 1197:24-1198:6). Post had knowledge of Weisman's claim of ownership over Sedgwick's right of publicity and copyright in the *Ciao! Manhattan* film and Sedgwick images, and of the existence of the Contract that granted those rights to Weisman.

3
DAVID WEISMAN'S MEDIATION BRIEF

Nevertheless, Post filed a 100% successor-in-interest claim to "all types of rights" pertaining to Sedgwick in 1988. (*Id.* at Ex. O, p. 1197:24-1198:6, Ex. P, p. 40:13-42:4, 44:21-45:5, Ex. Q, p. 1195:5-13, Ex. R).

Then, beginning in 2006, Post licensed images of Sedgwick to many third party licensors in exchange for fees in excess of $88,584, not including fees received in the years 2011 and 2012. (Ex. T, p. 17, p.35:25-39:22). Post at no time sought Weisman's consent. (Ex. O, p. 1197:13-16). Even when faced with uncontestable proof of Weisman's valid copyright in *Ciao! Manhattan*, Post still ludicrously insists that Weisman must seek Post's consent prior to exercising his copyright with regard to images directly from the film. (Ex. W, p. 29:12-30:1, p. 55:22-57:19).

### III.   PROCEDURAL POSTURE

Weisman filed the operative complaint (the "Complaint") on July 21, 2011. (Ex. D). The Complaint alleges causes of actions for copyright infringement, contributory infringement, violation of Right of Publicity pursuant to Cal. Civ. Code §3344.1 and declaratory judgment. (*Id.* at Ex. D, p. 4:23-6:22). The Complaint seeks both damages and declaratory relief. (*Id.* at Ex. D, p. 7:4-19). Post filed an answer and a counterclaim on October 12, 2011. (Ex. G). Weisman filed an answer to Post's counterclaim on November 7, 2011. (Ex. V). Weisman then filed a motion for summary judgment or in the alternative, summary adjudication, on April 8, 2013. (Ex. X). A hearing on the motion for summary judgment is presently set for July 18, 2013. In the meantime, parties have engaged in extensive discovery.

### IV.   ARGUMENT

**A.   Sedgwick Assigned Weisman a Broad Right of Publicity in Her Name, Likeness, and Biography, "Worldwide," "In Perpetuity," *and* in Connection with the Film *Ciao! Manhattan!***

"Federal diversity jurisdiction provides an alternative forum for the adjudication of state created rights, but it does not carry with it generation of rules of substantive law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426 (1996).  Thus, "[u]nder the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Id.* at 427.  Under California law, contract interpretation is a judicial function. *Nesson v. N. Inyo County Local Hosp. Dist.,* 138 Cal. Rptr. 3d 446, 463 (2012). Where the language of the contract is clear, explicit, and not absurd, it will be followed. Cal. Civ. Code § 1638.  "When a contract is reduced to writing, the intention of the parties to is to be ascertained from the writing alone, if possible." Cal. Civ. Code § 1639.  Any ambiguity may be resolved by the trial court if there is no extrinsic evidence admitted to interpret the contract or if the extrinsic evidence is not in conflict. *Wolf v. Superior Ct.*, 8 Cal. Rptr. 3d 649, 656 (2004).

In December 1970, Sedgwick assigned a broad grant of publicity to Weisman via contract.  (Ex. E, p. 1, ¶ 3).  In California, the right of publicity is freely transferable by contract or assignment.  Cal. Civ. Code § 3344.1.  The plain language of the Contract is ascertainable from the writing itself and does not contain any ambiguities which require resolution by the court.  The Contract assigns Weisman, "all rights, worldwide, in perpetuity, in all media and in all means whether presently known or unknown, to the results and proceeds of ARTIST'S services" as well as an assignment of Sedgwick's publicity rights for Weisman's exploitation in connection with *Ciao! Manhattan.*  (Ex. A).

Further, Post testified that Sedgwick's only commercial value at the time of her death was connected with Weisman's film *Ciao! Manhattan*.  (Ex. J, p. 13:1-15:7, Ex. K, p. 1185:10-1186:11).  Any increase in Sedgwick's commercial value after her death is directly attributable to the film *Ciao! Manhattan* and Weisman's continued efforts to develop the Sedgwick brand arising from the film. (Ex. U, p. 98:20-24, p. 1194:1-17). Thus, the Contract assigned Weisman the complete and exclusive right to benefit, in any form, from commercial use of Sedgwick's name, likeness, and biography.  The Contract's clear language dispels any notion that anyone other than Weisman is the owner of

1 Sedgwick's publicity rights.

2 California law permits consideration of parol evidence "to explain the meaning of
3 the terms of a contract even when the meaning appears unambiguous." *Foad Consulting
4 Grp., Inc. v. Azalino*, 270 F.3d 821, 826 (9th Cir. 2001). Extrinsic evidence that is often
5 considered includes testimony regarding the circumstances in which a contract was written.
6 *Miller v. Glenn Miller Productions*, 318 F. Supp. 2d 923, 934 (C.D. Cal. 2004).

7 Post, however, offers no substantive evidence that construes the contract to mean
8 anything other than its plain meaning. Post does not point to any extrinsic evidence to
9 support the inferences he draws from the contract language. Post simply asserts that the
10 Contract does not grant Weisman publicity rights and that this is the correct interpretation.
11 Therefore, in looking at the plain language of the Contract, the court should find that
12 Weisman owns ALL of Sedgwick's publicity rights.

### B. Cal. Civ. Code §3344.1 Prevents Post from Claiming That He Owns the Sedgwick Publicity Rights

California Civil Code Section §3344.1(b) provides that "[t]he rights recognized under this section are property rights, freely transferable or descendible, in whole or in part, by contract or by means of any trust or any other testamentary instrument…" Further, "nothing in this section shall be construed to render invalid or unenforceable any contract entered into by a deceased personality during his or her lifetime by which the deceased personality assigned the rights, in whole or in part, to use his or her name, voice, signature, photograph, or likeness…" *Id.*

Weisman's claim that the Sedgwick publicity rights were transferred to him by contract is further reinforced when taken together with Section 3344.1— publicity rights of a deceased personality. The statute itself uses the phrase "commercial value at the time of his or her death," thus monetizing the publicity rights and rendering them a property right with value that can be contracted away. At the time of contracting in December 1970, and at the time of her death eleven months later, one hundred percent of Sedgwick's

commercial value was attributable to the film *Ciao! Manhattan*. (Ex. J, p. 13:1-15:7, Ex. K, p. 1185:10-1186:11). Therefore, Weisman does not purport to own all publicity rights that *could have existed* had Sedgwick lived. Weisman only claims rights that existed by virtue of Sedgwick's role in *Ciao! Manhattan* and continued commercial value that arose as a result of Weisman's significant contribution to the development and promotion of the Sedgwick brand over the years stemming from the film. No commercial value exists in Sedgwick's publicity rights that Weisman has not himself personally cultivated.

Post argues that he is the sole successor in interest of Sedgwick's right of publicity. Section 3344.1(d)(1) provides that, in certain specified circumstances, rights transfer to the surviving spouse upon the personality's death. This is not such a circumstance. Post conveniently ignores that Section 3344.1(d)(1) also provides that in order for a surviving spouse to be successor-in-interest, the deceased cannot have contracted away the publicity rights during his or her lifetime. There is nothing in the statute that can render contractual transfer of rights invalid. Because of the Contract, Sedgwick had already contracted away the commercial value in her publicity rights and, therefore, no publicity rights were left to be transferred to Post upon Sedgwick's death. This is further supported by the fact that publicity rights are conspicuously absent from the probate order which distributed Sedgwick's estate. (Ex. M). Given the explicit rules regarding contracts under Cal. Civ. Code 3344.1, Weisman must be the rightful owner of the Sedgwick publicity rights.

## V.   CONCLUSION

Because Sedgwick assigned all publicity rights in connection with *Ciao! Manhattan* to Weisman and since Post has repeatedly testified that Sedgwick's name, likeness, and biography had no other commercial value upon her death besides *Ciao! Manhattan*, Post's claim to Sedgwick's publicity rights fails outright. Cal. Civ. Code 3344.1 corroborates this finding, explicitly stating that contract transfer of publicity rights in life supersedes any inheritance of such rights in death.

| | | |
|---|---|---|
| Dated: | May 24, 2013 | GIRARDI | KEESE |

By: _____
THOMAS V. GIRARDI
GRAHAM B. LIPPSMITH
Attorneys for Plaintiffs and Counter-Defendants