GIRARDI | KEESE
THOMAS V. GIRARDI, SBN 36603
tgirardi@girardikeese.com
GRAHAM B. LIPPSMITH, SBN 221984
glippsmith@girardikeese.com
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213) 481-1554

Attorneys for PLAINTIFF

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEISMAN, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>MICHAEL POST, an individual, and DOES 1-10,<br><br>          Defendant. | **CASE NO. CV-11-6033-GW (JCx)**<br><br>**Hon. George H. Wu**<br><br>**PLAINTIFF/COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| MICHAEL POST, an individual<br><br>          Counterclaimant,<br><br>v.<br><br>DAVID WEISMAN, an individual,<br><br>          Counter-defendant. | Hearing Date:    November 4, 2013<br>Hearing Time:    8:30 a.m.<br>Location:       Courtroom 10 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on November 4, 2013 at 8:30 a.m. in Courtroom 10 of the above-entitled Court located at 312 N. Spring Street, Los Angeles, California, Plaintiff/Counter-defendant David Weisman ("Plaintiff") will and hereby does move the Court for summary judgment or alternatively summary adjudication in Plaintiff's favor on Plaintiff's claims for: (1) violation of Right of Publicity pursuant to Cal. Civ. Code § 3344.1; and (2) declaratory judgment. Additionally, Plaintiff will and hereby moves the Court for summary judgment or alternatively summary adjudication on Defendant Michael Post's ("Defendant") counter-claim for violation of the common law and statutory Right of Publicity pursuant to Cal. Civ. Code § 3344.1.

Plaintiff bases this motion on the grounds that there are no disputed issues of material fact that: (1) Edith Sedgwick ("Sedgwick"), the deceased personality, granted Plaintiff a broad set of rights in her name, likeness and biography ("Sedgwick publicity rights") by contract on December 18, 1970; (2) Plaintiff owns "all rights worldwide in perpetuity in all media in all means presently known or unknown" as to the results and proceeds of Sedgwick's service relating to the motion picture *Ciao! Manhattan* as found by this Court pursuant to its interpretation of the December 18, 1970 contract (Transcript April 11, 2013, pp.5-6); (3) Cal. Civ. Code § 3344.1 acknowledges Plaintiff's property interest in Sedgwick's commercial value and validates the assignment of this property interest to Plaintiff; (4) Plaintiff owns the entirety of the Sedgwick publicity rights because all of the value in the Sedgwick publicity rights is connected with or derivative of Sedgwick's services in *Ciao! Manhattan*; and (5) Plaintiff is the owner of all copyrights in the film *Ciao! Manhattan*. Therefore, Plaintiff's ownership of the Sedgwick publicity rights in *Ciao! Manhattan* is undisputable and Plaintiff is free to exploit such rights.

It is further uncontestable that Defendant licensed the Sedgwick publicity rights and copyrighted material from *Ciao! Manhattan* without Plaintiff's consent, thereby violating Plaintiff's interest in the Sedgwick publicity rights. Defendant cannot claim such rights as a successor-in-interest because no right remained after Sedgwick assigned these property rights to

1  Plaintiff via contract in 1970. Further, Defendant does not dispute that he received no intellectual

2  property rights or publicity rights in the probate order disposing of Sedgwick's estate. Therefore,

3  there is no genuine issue of material fact that Plaintiff is the sole owner of the Sedgwick

4  Publicity Rights by virtue of the December 1970 contract, the effect of Section 3344.1, and

5  Plaintiff's copyright in the film *Ciao! Manhattan*.

6         This motion is based upon this notice; the attached Memorandum of Points and

7  Authorities; Plaintiff's Statement of Uncontroverted Material Facts; the Declaration of Graham

8  B. LippSmith and exhibits thereto; all pleadings and other records on file in this action; and any

9  further evidence and argument that may be presented at or before any hearing on the motion. A

10  Proposed Order Granting Plaintiff's Motion for Summary Judgment or in the Alternative,

11  Summary Adjudication is lodged herewith.

12

13  Dated:      October 2, 2013            GIRARDI | KEESE

14

15                             By:       */s/ Graham B. LippSmith*

16                                 THOMAS V. GIRARDI

17                                 GRAHAM B. LIPPSMITH
                               Attorneys for Plaintiff/Counter-Defendants

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF DAVID WEISMAN'S NOTICE OF
MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1
2
# TABLE OF CONTENTS
3

4  I.  INTRODUCTION .......................................................................................... 1

5  III.  STATEMENT OF UNDISPUTED FACTS ....................................................... 4

6  IV.  SUMMARY JUDGMENT STANDARD ............................................................ 6

7  V.  THE COURT SHOULD GRANT SUMMARY JUDGMENT OR SUMMARY

8      ADJUDICATION IN PLAINTIFF'S FAVOR ON DEFENDANT'S COUNTERCLAIM

9      ............................................................................................................. 7

10
11     A.  There is No Genuine Issue of Material Fact In Dispute Based on the Court's April
            11, 2013 and April 22, 2013 Interpretations of the December 1970 Contract .......... 7
12
13     B.  Plaintiff is Entitled to a Judgment as a Matter of Law that Defendant's Counterclaim
            is Barred by the Statute of Limitations .................................................. 9
14
15  VI.  THE COURT SHOULD GRANT SUMMARY JUDGMENT OR SUMMARY

16      ADJUDICATION IN PLAINTIFF'S FAVOR ON PLAINTIFF'S REMAINING

17      CLAIMS ............................................................................................. 11

18
19     A.  Sedgwick Assigned Plaintiff a Broad Right of Publicity in Her Name, Likeness and
            Biography, "Worldwide," "In Perpetuity" and In Connection With Ciao! Manhattan
20          ......................................................................................................... 11

21     B.  Cal. Civ. Code § 3344.1 Prevents Defendant From Claiming That He Owns the
            Sedgwick Publicity Rights ...................................................................... 12
22
23     C.  No Genuine Issue of Material Fact Exists As to Whether Defendant Violated
            Plaintiff's Exclusive Right to Exploit the Sedgwick Publicity Rights..................... 13
24
25  VII. CONCLUSION ...................................................................................... 14

26
27
28

1

## **TABLE OF AUTHORITIES**

2

**Statutes**

Cal. Civ. Code § 3344.1 ............................................................................*passim*

3

Cal. Code Civ. Proc. § 339 .......................................................................... 8

4

Fed. R. Civ. P. 56......................................................................................... 3

Fed. R. Civ. P. 56(c) ................................................................................... 5

5

6

**Cases**

7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................... 5

8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................... 5

*Christ v. Lipsitz*, 160 Cal Rptr. 498 (1979) ............................................... 8

9

*Christoff v. Nestle USA, Inc.*, 97 Cal. Rptr. 3d 798 (2009) ........................ 8

10

*Cusano v. Klein*, 264 F.3d 936 (9th Cir. 2001) .......................................... 8

*Jolly v. Eli Lilly and Co.*, 245 Cal. Rptr. 658 (1988) ................................. 8

11

*Lugosi v. Universal Pictures*, 25 Cal. 3d 813 (1979) ................................. 8

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)................ 5

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3

## **I.     INTRODUCTION**

4          This case concerns Plaintiff/Counter-defendant David Weisman's ("Plaintiff") ownership

5    of all rights, title, and interests in the copyright of the feature film *Ciao! Manhattan* and publicity

6    rights of the film's lead actress, Edith Sedgwick ("Sedgwick"). Defendant/Counter-plaintiff

7    Michael Post ("Defendant") licensed images that rightfully belong to Plaintiff to third parties,

8    violating Plaintiff's statutory right of publicity. Defendant counterclaimed against Plaintiff,

9    claiming violation of Defendant's alleged successor-in-interest rights. Defendant provides no

10   factual basis to support his counterclaim in his pleadings and discovery responses. Thus, Plaintiff

11   brings this motion for summary judgment or in the alternative, summary adjudication.

12         The Court should grant summary judgment in favor of Plaintiff on Plaintiff's statutory right

13   of publicity claim for several reasons. There are no genuine issues of material fact as to ownership

14   of the Sedgwick publicity rights with respect to Plaintiff's film *Ciao! Manhattan*. In December

15   1970, Sedgwick assigned Plaintiff a broad grant to use her publicity rights by contract. The Court

16   already interpreted this contract to mean that "the artist, Edith Sedgwick, granted the producer Mr.

17   Weisman, all rights worldwide in perpetuity in all media in all means presently known or

18   unknown . . . ." as to results and proceeds of the artist's services involved in the making of *Ciao!*

19   *Manhattan*. (LippSmith Dec. Ex. Q, Hr'g Tr. 5-6, April 11, 2013).Yet, Defendant contends that he

20   is the sole successor-in-interest to Sedgwick's publicity rights because he was her husband at the

21   time she died. However, Defendant fails to recognize the essential part of California Civil Code

22   Section 3344.1 (Deceased Personality Right of Publicity) that acknowledges and upholds

23   assignment of publicity rights that occurred during the deceased personality's lifetime. Further,

24   Defendant fails to address the absence of intellectual property rights or publicity rights in the

25   probate order dispensing Sedgwick's estate. Defendant never attempted to re-open probate to

26   include publicity rights. For these reasons, there is no genuine issue of material fact as to whether

27   Plaintiff received a broad grant of Sedgwick's publicity rights in the December 1970 contract, or

28   whether this assignment is upheld by the law under Section 3344.1.

Section 3344.1 treats the right of publicity as a freely assignable property right. Here, Sedgwick merely assigned her property interest in her commercial value arising out of services performed in connection to filming *Ciao! Manhattan.* Defendant admits that Sedgwick's only commercial value at the time of contracting and at the time of her death arose in connection with her role in *Ciao! Manhattan*. Plaintiff does not claim that if Sedgwick had lived, Plaintiff would own all her publicity rights in their entirety in perpetuity. Rather, Plaintiff's ownership interest is in the publicity rights that Sedgwick assigned to him via contract – these same rights upheld and acknowledged in Section 3344.1 – which Plaintiff continued to develop and foster after Sedgwick's death with marketing and promotion of the Sedgwick brand flowing directing from Plaintiff's film, *Ciao! Manhattan*.

Additionally, Defendant does not contest the fact that beginning in 2006, he licensed images encompassed by the Sedgwick publicity rights to third parties. Therefore, because Plaintiff is the rightful owner of the Sedgwick publicity rights, and Defendant licensed these images without Plaintiff's consent, Defendant clearly violated the Sedgwick publicity rights and trial on these issues is unnecessary.

Finally, because Plaintiff owns the Sedgwick publicity rights by virtue of assignment and upheld by Section 3344.1, Defendant cannot own the rights he claims. Defendant would have been the successor-in-interest if the rights had not already been contracted away because Sedgwick died intestate. However, there were no publicity rights left to transfer to Defendant at the time of Sedgwick's passing since all of Sedgwick's commercial value arose from and was in connection with her role in *Ciao! Manhattan* and had been conveyed to Plaintiff. Further, conspicuously absent from Sedgwick's probate order is any mention of publicity rights or intellectual property. Even if the Court finds that Defendant owns a portion of the Sedgwick publicity rights, Defendant's right of publicity claim is based on one licensing agreement by Plaintiff – a 2006 licensing agreement with Kung Fu, Inc. This claim is definitively barred by the two year statute of limitations. Therefore, no genuine issue of material fact remains on this claim and the Court should grant summary judgment in Plaintiff's favor.

For the reasons set forth herein, Plaintiff respectfully requests that the Court GRANT

PLAINTIFF DAVID WEISMAN'S
MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Plaintiff's Motion for Summary Judgment or in the Alternative, Summary Adjudication pursuant to Fed. R. Civ. P. 56 on Plaintiff's claims for: (1) violation of the statutory right of publicity pursuant to Cal. Civ. Code § 3344.1; and (2) declaratory judgment. Plaintiff requests that the Court find that there is no genuine issue of material fact as to Defendant's counterclaim for violation of the right of publicity and find in favor of Plaintiff on Defendant's counterclaim.

## II.    PROCEDURAL HISTORY

On July 21, 2011, Plaintiff filed the instant case alleging four claims: (1) copyright infringement; (2) contributory infringement; (3) violation of Plaintiff's statutory right of publicity pursuant to Cal. Civ. Code § 3344.1; and (4) declaratory judgment against Defendants Post, Hysteric Glamour USA, and Sanrio Far East Company. On October 12, 2011, Defendant Post filed an answer and a counterclaim alleging that Plaintiff violated Defendant Post's successor-in-interests rights. On November 7, 2011, Plaintiff answered Defendant's Post's counterclaim.  On April 24, 2012, Plaintiff filed a Motion to Compel Discovery Responses of Defendant Post. On May 9, 2012, the Court granted Plaintiff's Motion to Compel. On July 25, 2012, Plaintiff filed a Motion for Sanctions as to Defendant Post's failure to comply with the Court's Order. On July 19, 2012 the Court granted Plaintiff's Motion for Sanctions as against Defendant Post. Again on August 30, 2012, Plaintiff filed a Motion for Sanctions against Defendant Post for his failure to comply with the Court's order. On September 10, 2012, the Court granted Plaintiff's Motion for Sanctions. On October 2, 2012, Defendants Hysteric Glamour USA and Sanrio Far East Company were dismissed with prejudice and Defendant Post remained as the sole Defendant. In preparation for trial, Plaintiff filed his pretrial documents on January 31, 2013 and again on February 15, 2013. Also on January 31, 2013, Defendant Post attempted to file a Motion for Summary judgment which was stricken by the Court for failure to comply with Court orders. On February 25, 2013, at the Pretrial Conference, the Court ordered the parties to file simulatenous briefs and vacated the trial date. On March 13, 2013, Plaintiff and Defendant both filed their simulataneous briefs. On On April 11, 2013, the Court heard the parties' argument and circulated the Court's contract interpretation. Also on April 11, 2013, the Court continued the Pretrial Conference to

1   April 22, 2013. On April 22, 2013, the Court heard further argument regarding the contract

2   interpretation and referred the parties to Magistrate Judge Margaret A. Nagle ("Judge Nagle") for

3   mediation. On June 20, 2013, the parties attended a Settlement Conference with Judge Nagle. In

4   September 2013, the parties met with Judge Nagle for a second Settlement Conference. However,

5   settlement was not reached at that time. In accordance with the Court's briefing schedule, Plaintiff

6   files the instant Motion for Summary Adjudication, Or, In the Alternative, Summary

7   Adjudication.

8

9                        III.    STATEMENT OF UNDISPUTED FACTS

10          Plaintiff is a filmmaker, author, and graphic artist best known for his role as sole producer

11   in the Oscar-winning film "Kiss of the Spider Woman." *See* Plaintiff's Statement of Undisputed

12   Fact ("SUF") ¶ 1. In 1967, Plaintiff began his filmmaking career with the film *Ciao! Manhattan*, a

13   semi-autobiographical story based on actress and model Edith Sedgwick. SUF ¶ 2. Until her death

14   in November 1971, Sedgwick was continually plagued with substance abuse problems and was in

15   and out various drug and mental treatment facilities, preventing timely completion of the film.

16   SUF ¶ 3. In December 1970, Plaintiff and Sedgwick entered into a contract in which Sedgwick

17   granted "[Plaintiff] all rights, worldwide, in perpetuity, in all media and in all means whether

18   presently known or unknown, to the results and proceeds of ARTIST'S [Sedgwick's] services,

19   and grants [Plaintiff] the right to utilize ARTIST'S [Sedgwick's] name, likeness and biography in

20   connection with advertising or publicizing the motion picture 'CIAO! MANHATTAN.'" SUF ¶ 4.

21          In 1970, while in a mental health facility in Santa Barbara, Sedgwick met Defendant who

22   was also a patient in the psychiatric ward. SUF ¶ 5. On July 24, 1971, Sedgwick and Defendant

23   were married in Santa Barbara. SUF ¶ 6. Three months later, the night of Sedgwick's death,

24   Sedgwick told Defendant that she wanted to end their marriage, mentioning another man. SUF

25   ¶ 7. That night, Defendant administered Sedgwick's medications and in the morning, Sedgwick

26   was dead. SUF ¶ 8. The autopsy reported that Sedgwick's blood alcohol level was 0.17% and a

27   large presence of barbiturates in her bloodstream ultimately caused her death. SUF ¶ 9.

28          In July 1972, *Ciao! Manhattan* was completed and its worldwide premiere occurred in

1  Amsterdam. SUF ¶ 10. Plaintiff as author, producer, and creator of *Ciao! Manhattan* owns all

2  copyrightable material arising from and associated with the film. SUF ¶ 11. Plaintiff registered

3  *Ciao! Manhattan* with the U.S. Copyright Office on October 26, 1983. SUF ¶ 12.

4        The entirety of Sedgwick's commercial value in her name, likeness, and biography at the

5  time of her death arose from Sedgwick's participation and connection with Plaintiff's *Ciao!*

6  *Manhattan* film. SUF ¶ 13. Sedgwick died intestate. SUF ¶ 14. The probate order disposing of

7  Sedgwick's estate only devised $3,807.73 and 65 shares of capital stock of Western Independent

8  Corporation to Defendant and conspicuously lacked mention of any intellectual property that

9  existed as part of Sedgwick's estate at the time of her death. SUF ¶ 15. At no time did Defendant

10 attempt to re-open probate to include publicity rights or intellectual property. SUF ¶ 16. Despite

11 Defendant's knowledge of Plaintiff's claim of ownership over Sedgwick's right of publicity and

12 copyright in the *Ciao! Manhattan* film and Sedgwick images, and Defendant's knowledge of the

13 existence of a contract purporting to grant those rights to Plaintiff, Defendant filed a successor-in-

14 interest to "all types of rights" pertaining to Sedgwick in 1988 after Sedgwick's mother's death.

15 SUF ¶ 17. Beginning in 2006, Defendant licensed Sedgwick images to many third party licensors

16 in exchange for fees in excess of $88,584, not including fees received in 2011 and 2012. At no

17 time did Defendant seek Plaintiff's consent to grant these licenses.   SUF ¶ 18.

18       In 2006, Plaintiff authored the book *Edie: Girl on Fire* which depicts images of Sedgwick

19 from *Ciao! Manhattan*, and other Sedgwick images for which Plaintiff obtained licenses.  Plaintiff

20 is the sole and exclusive owner to the copyrights of *Edie: Girl on Fire*. SUF ¶ 19.  Additionally in

21 2006, Plaintiff entered into a licensing agreement with Kung Fu, Inc., an apparel design company,

22 granting Kung Fu, Inc. a one-year license to use Sedgwick images from Plaintiff's film *Ciao!*

23 *Manhattan* on t-shirts and other merchandise. SUF ¶ 20. All publications of the Kung Fu, Inc. t-

24 shirts depicting Sedgwick images occurred within that one year. SUF ¶ 21. Kung Fu, Inc.

25 distributed and marketed the t-shirts to the world at large through distributors such as Urban

26 Outfitters and Hot Topic. SUF ¶ 22.

27       In 2006, Kristina Eriksen ("Eriksen"), Defendant's wife at the time, was working as

28 Defendant's agent in the enforcement of Defendant's licenses. SUF ¶23. Ms. Eriksen contacted

Urban Outfitters claiming that the image of Sedgwick on the Kung Fu, Inc. t-shirts belonged to Defendant. SUF ¶ 24.  The sole basis of Defendant's counterclaim is Plaintiff's licensing agreement with Kung Fu, Inc. SUF ¶ 25. For thirty-seven years, Plaintiff developed and promoted the Sedgwick brand without interruption or protest from anyone, including Defendant. SUF ¶ 26. Defendant did not challenge Plaintiff's ownership or exploitation of the Sedgwick brand until he filed a counterclaim in the instant action. SUF ¶ 27.

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact is present when the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must identify the reasons "it believes demonstrate absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must "construe the facts in the light most favorable to the non-moving party . . ." *Anderson*, 477 U.S. at 255. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. Where the nonmoving party fails to establish the existence of an element that is essential for resolution of that party's case, summary judgment is appropriate. *See Celotex*, 477 U.S. at 322. "Metaphysical doubt as to the material facts" is not a sufficient showing. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

///

///

///

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT OR SUMMARY ADJUDICATION IN PLAINTIFF'S FAVOR ON DEFENDANT'S COUNTERCLAIM**

### A. There is No Genuine Issue of Material Fact In Dispute Based on the Court's April 11, 2013 and April 22, 2013 Interpretations of the December 1970 Contract

On April 11, 2013 and again on April 22, 2013, this Court offered its interpretation of the December 18, 1970 contract between Plaintiff and Sedgwick during a hearing on the parties' briefing of the issues. The Court very clearly indicated that Sedgwick granted Plaintiff all rights worldwide in perpetuity in all media in all means presently known or unknown as to the results and proceeds of Sedgwick's services with regard to *Ciao! Manhattan*. The Court expressly stated: "it seems to me that all the stills from that movie, all the publicity shots from the movie, everything else [Sedgwick] did during that period of time, obviously, is the property of Mr. Weisman; and he can utilize them in perpetuity in any form of media, et cetera." (LippSmith Dec. Ex. Q, Hr'g Tr. 6, April 11, 2013). The Court continued to define the scope of Plaintiff's rights saying: "[f]or example, [Plaintiff] can put [Sedgwick's] still from the films on T-shirts; they can put it on posters; they can do whatever. Her image belongs to Mr. Weisman." (*Id*. at  Hr'g Tr. 7, April 11, 2013).

The Court reiterated this analysis during the April 22, 2013 hearing. (LippSmith Dec. Ex. R, Hr'g Tr. 7, April 22, 2013). When Defendant's counsel requested further clarification as to the scope of Plaintiff's rights suggesting that the Plaintiff could only use Sedgwick's image in connection with publicizing and advertising, the Court corrected Defendant's counsel:

Mr. Newlan:        I think, the – the right that David Weisman has to use: The image, likeness, name of those images, relates only to publicizing and advertising; is that correct?

The Court:           No. They can sell the images on other – you know, independently. For example, you know, they could use, you know a still from the motion picture itself.

Mr. Newlan:        To advertise or publicize.

---

7

| | | |
|---|---|---|
| 1 | The Court: | No. They could – no. Because she's – she's into -- the |
| 2 | | contract, itself, indicates that, you know, she grants in |
| 3 | | perpetuity in all media and in all means, whether presently |
| 4 | | known or unknown, the results and proceeds of the artists |
| 5 | | services. And "the results and proceeds of the artist's |
| 6 | | services" would include, you know, any picture that she took |
| 7 | | – they took of her in the movie, et cetera, et cetera. |

8    (*Id.* at Hr'g Tr. 8-9, Apr. 22, 2013 ).

9    Defendant provided no factual basis upon which to base his counter-claim and utterly

10   failed to identify any specific violations by Plaintiff in his pleadings.  Further, during the written

11   discovery period, Defendant did not identify any evidentiary basis to support his claim.  However,

12   Defendant did state that if an evidentiary basis arose, he would amend his discovery responses.

13   Defendant never amended his discovery responses to identify a factual basis for his counterclaims.

14   On December 20, 2012, Plaintiff took Defendant's deposition.  During the deposition,

15   Defendant identified a 2006 Kung Fu, Inc. licensing agreement as the sole basis for his counter-

16   claim.  SUF ¶ 25.  Plaintiff, in the 2006 Kung Fu, Inc. licensing agreement granted Kung Fu, Inc.

17   a license to use images of Sedgwick from Plaintiff's film *Ciao! Manhattan* on t-shirts and other

18   merchandise. SUF ¶ 20. Each and every image included in the Kung Fu, Inc. licensing agreement

19   comes directly from *Ciao! Manhattan*. SUF ¶ 20. As argued by Plaintiff and as supported by this

20   Court, Plaintiff is free to do whatever he pleases with the images of Sedgwick that come directly

21   from Plaintiff's film, *Ciao! Manhattan*. This includes licensing the image to a third-party, such as

22   Kung Fu, Inc., for making and selling t-shirts bearing Sedgwick's images from *Ciao! Manhattan*.

23   For these reasons, there are no genuine issues of material facts with regard to Defendant's

24   counterclaim. Accordingly, the Court should find in Plaintiff's favor and GRANT Plaintiff's

25   motion for summary judgment or in the alternative summary adjudication on Defendant's claim.

26   ///

27   ///

28   ///

PLAINTIFF DAVID WEISMAN'S
MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1        **B.**     **Plaintiff is Entitled to a Judgment as a Matter of Law that Defendant's**

2               **Counterclaim is Barred by the Statute of Limitations**

3        The fundamental purpose of the statute of limitations is to provide defendants repose. *Jolly*

4 *v. Eli Lilly and Co.*, 245 Cal. Rptr. 658, 662-63 (1988). In order to adequately effectuate this

5 purpose, defendants have a duty to reasonably investigate suspicion of wrongdoing and diligently

6 pursue his counterclaim. *Id*. Those who fail to act "with reasonable dispatch will be barred." *Id*.

7 "While resolution of the statute of limitations issue is normally a question a fact, where the

8 uncontradicted facts established through discovery are susceptible of only one legitimate

9 inference, summary judgment is proper." *Id.* at 663 (citing *Christ v. Lipsitz*, 160 Cal Rptr. 498,

10 501 (1979)).

11        The statute of limitations under Section 3341.1 and corresponding common law right of

12 publicity claim is two years. *See* Cal. Code Civ. Proc. § 339; *Cusano v. Klein*, 264 F.3d 936, 950

13 (9th Cir. 2001); *Christoff v. Nestle USA, Inc.*, 97 Cal. Rptr. 3d 798 (2009); *Lugosi v. Universal*

14 *Pictures*, 25 Cal. 3d 813 (1979). The statute of limitations is triggered at "first publication" of the

15 allegedly infringing material. *Cusano*, 264 F.3d at 950.

16        Defendant counterclaimed against Plaintiff, asserting that Defendant was sole and

17 exclusive owner of the Sedgwick publicity rights and that Plaintiff violated this right of publicity.

18 As discussed *infra*, Defendant's claim that he is the successor-in-interest to the Sedgwick

19 publicity rights fails because the publicity rights were transferred to Plaintiff by contract and

20 further protected and acknowledged in Section 3344.1. Therefore, Defendant owns no such rights

21 which could be violated.

22        Further, Defendant cannot identify a specific instance of a purported violation other than a

23 licensing agreement with Kung Fu, Inc. which is barred by the statute of limitations. Here, the

24 first publication occurred in 2006 when Kung Fu, Inc. distributed the *Ciao! Manhattan* t-shirts

25 that Defendant claims violated the Sedgwick right of publicity. SUF ¶ 21. Accordingly, the last

26 date that Defendant could have brought his claim is 2008.  Therefore, Defendant's attempt to

27 assert this claim in 2011 is untimely.

28        Defendant offers no argument that tolls the statute of limitations. In certain cases, a *series*

1   of publications can toll the statute of limitations, effectively restarting the clock at the latest

2   publication. *See Christoff*, 97 Cal. Rptr. at 807-809. In some cases, the statute of limitations can

3   be tolled in the event of "delayed discovery." *See id*. The delayed discovery rule does not apply

4   when the subject at issue is not published in an inherently secretive manner and is distributed

5   widely to the public. *Id*.

6          The Kung Fu, Inc. licensing agreement provides that the duration of the license was one

7   year. SUF ¶ 20. All "publications" of the t-shirts occurred within that year. SUF ¶ 21. Any t-shirt

8   sales outside of the license period were simply remnants of the original 2006 publication and not a

9   subsequent publication. *Id*. The Kung Fu, Inc. *Ciao! Manhattan* t-shirt was not published in a

10  secretive manner. The t-shirt was distributed and marketed to the world at large through

11  distributors such as Urban Outfitters and Hot Topic. SUF ¶ 22.

12         Additionally, Defendant's discovery of the *Ciao! Manhattan* t-shirt occurred in the same

13  year as its publication, *i.e.*, 2006. Defendant acknowledged that Eriksen, Defendant's wife in

14  2006, worked as Defendant's agent in enforcing Defendant's licenses in 2006. SUF ¶ 23. On

15  November 20, 2006, Eriksen contacted Urban Outfitters, one of Kung Fu, Inc.'s distributors,

16  about the *Ciao! Manhattan* t-shirts which Defendant now alleges infringed the Sedgwick right of

17  publicity. SUF ¶ 24. Since Eriksen acted as Defendant's agent with regard to the Kung Fu, Inc.

18  merchandise in 2006, Defendant cannot argue "delayed discovery" to toll the statute of

19  limitations. Because Defendant did not bring the right of publicity claim until 2011, at least four

20  years after the statute of limitations expired, Defendant's right of publicity claim is barred.

21         Further, Defendant concedes that he has no other basis for his right of publicity claim

22  against Plaintiff. SUF ¶ 25. Since Defendant does not dispute any of these facts, there is no

23  genuine issue of material fact to be decided. Therefore, the Court should grant Plaintiff's request

24  and dispose of Defendant's counterclaim for at least two reasons: (1) since Sedgwick transferred

25  her publicity rights by contract to Plaintiff prior to her death, there were no rights left for

26  Defendant to claim as a successor-in-interest that Plaintiff could violate; and (2) even if Defendant

27  owns a portion of the Sedgwick publicity rights, Defendant's counterclaim is barred by the statute

28  of limitations.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.   THE COURT SHOULD GRANT SUMMARY JUDGMENT OR SUMMARY ADJUDICATION IN PLAINTIFF'S FAVOR ON PLAINTIFF'S REMAINING CLAIMS

**A.   Sedgwick Assigned Plaintiff a Broad Right of Publicity in Her Name, Likeness and Biography, "Worldwide," "In Perpetuity" and In Connection With *Ciao! Manhattan***

In December 1970, Sedgwick assigned a broad grant of right of publicity to Plaintiff via contract. SUF ¶ 4. In California, the right of publicity is freely transferable by contract or assignment. Cal. Civ. Code § 3344.1. Additionally, the language of Section 3344.1(p) expressly states "[t]he rights recognized by this section are expressly made retroactive, including to those deceased personalities who died before January 1, 1985."

The December 18, 1970 contract reads: "ARTIST hereby grants PRODUCER all rights, worldwide, in perpetuity, in all media and in all means whether presently known or unknown, to the results and proceeds of ARTIST'S services, and grants PRODUCER the right to utilize ARTIST'S name, likeness and biography in connection with advertising or publicizing the motion picture 'CIAO! MANHATTAN.'" The Court confirmed the meaning of this language by stating that Plaintiff owned the Publicity rights in connection with the film *Ciao! Manhattan*. *See* (LippSmith Dec. Exs. Q, R, Hr'g Tr., April 11, 2013; April 22, 2013).

It is undisputed that Sedgwick's only commercial value at the time of her death was connected to and arising from Plaintiff's film *Ciao! Manhattan*. SUF ¶ 13. Defendant himself testified to this fact during a deposition taken in a previous civil case involving a member of Sedgwick's family versus Defendant which litigated similar issues:

Q.   Do you know if there were any communications to her during the time that you knew her, the time of your marriage, proposing that she engage in some sort of activity, filming, modeling, anything else?

[Post]: From whom?

Q.   From anybody.

---

11

1    [Post]: From anybody?

2    Q.      Yes. Setting aside *Ciao!* because you told me about that.

3    [Post]: No. Besides *Ciao!*, no, not that I'm aware of.

4    Q.      So basically, the summary is during the time that you knew her, *Ciao*! was

5            the only commercial venture she was involved in?

6    [Post]: Correct.

7    SUF ¶ 13.

8    Because the December 1970 contract assigns "all rights, worldwide, in perpetuity, in all

9    media and in all means *whether presently known or unknown, to the results and proceeds of*

10   *ARTIST'S services*" (emphasis added) in connection with *Ciao! Manhattan*, Sedgwick's entire

11   commercial value at the time of her death and to present day is as a result of and in connection

12   with Plaintiff's film *Ciao! Manhattan*. Thus, the contract assigned Plaintiff the complete and

13   exclusive right to benefit, in any form, from commercial use of Sedgwick's name, likeness, and

14   biography.

15   **B.    Cal. Civ. Code § 3344.1 Prevents Defendant From Claiming That He Owns the**

16   **Sedgwick Publicity Rights**

17   California Civil Code Section 3344.1(b) provides that "[t]he rights recognized under this

18   section are property rights, freely transferable or descendible, in whole or in part, by contract or

19   by means of any trust or any other testamentary instrument, executed before or after January 1,

20   1985." Further, "[n]othing in this section shall be construed to render invalid or unenforceable any

21   contract entered into by a deceased personality during his or her lifetime by which the deceased

22   personality assigned the rights, in whole or in part, to use his or her name, voice, signature,

23   photograph, or likeness, regardless of whether the contract was entered into before or after

24   January 1, 1985." *Id*.

25   Plaintiff's claim that the Sedgwick publicity rights were transferred to him by contract is

26   further reinforced when taken together with Section 3344.1 – publicity rights of a deceased

27   personality. The statute itself uses the term "commercial value," thus monetizing the publicity

28   rights from a concept into a property right with value that can be contracted away. At the time of

contracting, and at the time of Sedgwick's death, all of Plaintiff's commercial value was attributable to *Ciao! Manhattan*. SUF ¶ 13. Therefore, Plaintiff does not purport to own all publicity rights that *could have existed* had Sedgwick lived. Plaintiff only claims rights that existed by virtue of Sedgwick's role in *Ciao! Manhattan* and enduring commercial value that arose as a result of Plaintiff's continued promotion and development of the Sedgwick brand over the years as stemming from the film.

Defendant argues that he is the sole successor in interest of Sedgwick's right of publicity. Section 3344.1(d)(1) provides that in certain specified circumstances, rights transfer to the surviving spouse upon the personality's death. This is not such a circumstance. Defendant conveniently ignores the first part of Section 3344.1(d)(1) which provides that in order for a surviving spouse to be successor-in-interest, the deceased cannot have contracted away the publicity rights during his or her lifetime. As outlined above, Section 3344.1(b) specifically recognizes that the publicity right can be transferred by contract and that nothing in the statute can render that contractual transfer of rights invalid. Because of the December 18, 1970 contract between Plaintiff and Sedgwick, Sedgwick had already contracted away the commercial value in her publicity rights and therefore, no publicity rights were left to be transferred to Defendant upon Sedgwick's death. This is further supported by the fact that publicity rights are conspicuously absent from the probate order which distributed Sedgwick's estate. SUF ¶ 15. Given that no genuine of issue of material fact remains, the Court should find that Plaintiff is the rightful owner of the Sedgwick publicity rights.

**C.** **No Genuine Issue of Material Fact Exists As to Whether Defendant Violated Plaintiff's Exclusive Right to Exploit the Sedgwick Publicity Rights**

As discussed *supra*, Plaintiff is the exclusive holder of the Sedgwick publicity rights arising from and in connection with exploitation of *Ciao! Manhattan*. Defendant does not deny that he licensed Sedgwick images to third party licensors. In fact, in Defendant's deposition taken on December 20, 2012, Defendant listed the third party licensors to whom he had "granted" the right to use the Sedgwick publicity rights, as well as proceeds he collected from exploitation of

those rights. SUF ¶ 18. Further, Defendant was aware both of the contract between Sedgwick and Plaintiff and the fact that the images Defendant was licensing potentially belonged to Plaintiff. SUF ¶ 28. Defendant at no time sought Plaintiff's consent. SUF ¶ 18. For these reasons, the Court should grant summary judgment, finding that Defendant violated the Sedgwick right of publicity owned by Plaintiff.

## VII.  CONCLUSION

In 1970, Plaintiff became the sole owner of the Sedgwick publicity rights by virtue of the December 1970 contract between Sedgwick and Plaintiff. In 1972, Plaintiff became the sole owner of any and all copyrights in or associated with the film *Ciao! Manhattan*. Though Defendant claims a right to control Sedgwick's name, likeness, and biography because he is Sedgwick's surviving spouse and Sedgwick died intestate, Defendant simply has no such right because: (1) Plaintiff owns the copyright to the film *Ciao! Manhattan*; (2) Sedgwick's entire commercial value at the time of contracting with Plaintiff and at the time of her death was limited to services she provided in her role in *Ciao! Manhattan*; (3) any increase in Sedgwick's commercial value after her death is directly attributable to the film *Ciao! Manhattan* and Plaintiff's continued efforts to develop the Sedgwick branding arising from the film; (4) Sedgwick assigned the entirety of her existing commercial value in her publicity rights to Plaintiff in the December 18, 1970 contract; (5) California Civil Code § 3344.1 precludes rendering such a contract invalid; (6) Sedgwick's probate limited Defendant's recovery to only "[c][ash in the sum of $3,807.73 . . . and . . . 65 shares of Capital Stock of Western Independent Corporation"; and (7) Defendant licensed the Sedgwick publicity rights that belonged to Plaintiff by virtue of copyright, sustained by Section 3344.1 and by the 1970 contract, to third party licensors beginning in 2006 thereby damaging Plaintiff. Defendant has presented no evidence to controvert these facts.

For these reasons, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor, finding: (1) Defendant violated Plaintiff's right of publicity under Cal. Civil. Code § 3344.1; and (2) declaratory judgment stating Plaintiff is the owner of the Sedgwick publicity

1   rights. Additionally, Plaintiff respectfully requests that the Court GRANT Plaintiff's motion for
2   summary judgment or in the alternative, summary adjudication, on Defendant's counterclaim on
3   the basis that: (1) Defendant does not own the Sedgwick publicity rights; and (2) Defendant's
4   claim is barred by the statute of limitations.

6   Dated:        October 2, 2013                        GIRARDI | KEESE

8                                              By:    */s/ Graham B. LippSmith*
9                                                     THOMAS V. GIRARDI
10                                                    GRAHAM B. LIPPSMITH
11                                                    Attorneys for Plaintiff and Counter-
                                                      Defendant

PLAINTIFF DAVID WEISMAN'S
MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION