GIRARDI | KEESE
THOMAS V. GIRARDI, SBN 36603
tgirardi@girardikeese.com
GRAHAM B. LIPPSMITH, SBN 221984
glippsmith@girardikeese.com
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone:  (213) 977-0211
Facsimile:   (213) 481-1554

Attorneys for PLAINTIFF

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WEISMAN, an individual, | **CASE NO. CV-11-6033-GW (JCx)** |
| Plaintiff, | |
| v. | **Hon. George H. Wu** |
| MICHAEL POST, an individual, and DOES 1-10, | **JOINT SUBMISSION** |
| Defendant. | Hearing Date:  May 5, 2014<br>Time: 8:30 a.m.<br>Location: Courtroom 10 |
| MICHAEL POST, an individual | |
| Counterclaimant, | |
| v. | |
| DAVID WEISMAN, an individual, | |
| Counter-defendant. | |

i

**JOINT SUBMISSION**

## I. INTRODUCTION

Following the March 20, 2014 hearing before this Court on the parties' cross-motions for summary judgment, the Court requested that the parties draft a Joint Submission identifying remaining issues in this litigation. Specifically, the Court instructed the parties to outline the following: (1) points upon which both parties agree; (2) remaining disputes between the parties; (3) any disputes over issues the Court has already decided; and (4) issues remaining to be tried. (March 20, 2014 Tr.). Pursuant to these instructions, Plaintiff David Weisman ("Plaintiff") and Defendant Michael Post ("Defendant") file the instant Joint Submission.

## II. JOINT SUBMISSION

1. **Agreed Upon Points**

    a. Plaintiff and Sedgwick entered into a contract in which Sedgwick granted Plaintiff "all rights, worldwide, in perpetuity, in all media and in all means whether presently known or unknown, to the results and proceeds of [Sedgwick's] services, and ... the right to utilize [Sedgwick's] name, likeness and biography in connection with advertising or publicizing the motion picture *'CIAO! MANHATTAN.'*" ( Nov. 4, 2013 Tentative at p. 3).

    b. While married to Defendant, Sedgwick died intestate in late 1971, a little less than a year before *Ciao! Manhattan* had its worldwide premiere. (*Id*).

    c. The probate order disposing of, Sedgwick's estate only devised $3,807.73 and 65 shares of capital stock of Western Independent Corporation to Defendant, and did not mention any intellectual property that existed as part of Sedgwick's estate at the time of her death. The probate order defined those assets as Sedgwick's "entire estate," and further ordered "that unless further estate not described above is discovered, no further proceedings shall be had in the administration of the estate of Sedgwick. (*Id*).

    d.    Defendant never attempted to reopen probate to include any publicity or intellectual property rights. (*Id*).

    e.    In 1988, following Sedgwick's mother's death, Defendant filed as successor-in-interest to "all types of rights" related to Sedgwick, though he knew of Plaintiff's contract with Sedgwick and of Plaintiff's claim of ownership over Sedgwick's right of publicity and copyright in the *Ciao! Manhattan* film and Sedgwick images. (*Id*).

    f.    Defendant claims not to have been aware of "any interest in commercial use" of Sedgwick's name and likeness before 2006, and associates the start of that commercial interest with a movie about Sedgwick called *Factory Girl.* (*Id*).

    g.    Defendant's then-wife, working as his licensing-enforcement agent at the time, learned in 2006 about t-shirts and other merchandise bearing Sedgwick images for sale at Urban Outfitters (and that had been licensed through Kung Fu, Inc., an apparel design company).  Defendant "has no other basis for his right of publicity claim against Plaintiff." (*Id*. at 4).

    h.    Defendant himself licensed Sedgwick images beginning in 2006, obtaining, at a minimum, $88,584 in fees. (*Id*).

**2.    <u>Remaining Disputes Between the Parties</u>**

    **a.    Plaintiff**

        i.    *Extent of the Parties Rights Under § 3344.1*

Because Defendant failed to determine what rights, if any, he has while taking into consideration the effect of the Probate Order assigning Sedgwick's estate, the Court has not reached the extent of the parties' rights under § 3344.1. Plaintiff's position is that he owns all of Sedgwick's publicity rights because all of Sedgwick's commercial value stemmed from and arose out of his film *Ciao! Manhattan*.  Defendant disputes this, claiming that Sedgwick had independent commercial value at the time of her death.  Therefore, a dispute remains on the nature of Sedgwick's commercial value and the extent of the parties' rights under § 3344.1 with

3

regard to that commercial value.

        ii.    *Copyright*

On November 4, 2013 and January 30, 2014, the Court acknowledged that "[Plaintiff] holds copyright-based rights to any still images taken from *Ciao! Manhattan*." (Jan. 30, 2014 Tentative at p. 5 ). The Court also confirmed that Plaintiff owned rights to images taken during the approximately three-week period outlined in the December 1970 contract between Plaintiff and Sedgwick. (*Id.* at 1). In Defendant's most recent papers, Defendant attempts to bring a much belated copyright claim before the Court. Plaintiff disputes that this claim is proper for several reasons: (1) Defendant failed to raise this claim with regard to the "Wedding Footage" and the "Edie Looking Up" image until this last round of briefing and any claims with respect to those images are therefore waived; (2) the two-year statute of limitations on any such claim ran over thirty years ago; and (3) Defendant submits only inadmissible evidence in support of these claims. Plaintiff asserts that there is no "real, concrete, reason or controversy" for the Court to decide on the issue or extent of Plaintiff's ownership of copyright. (Mar. 20, 2014 Tentative at p. 7). The Court did not definitively address this issue. Therefore, Plaintiff mentions his concerns on this matter. However, Plaintiff asserts that because there is no real controversy properly before this Court, there is no dispute on this point.

    b.    **Defendant**

        i.    It is Defendant's position that the Plaintiff has no rights under 3344.1. The statute provides that the rights of the "successor-in-interest" are subject to existing agreements made during the lifetime of the deceased person. The court has ruled that the successor-in-interest rights are subject to Plaintiff's the rights set out in the 1970 agreement between Edie Sedgwick and Plaintiff to "all rights, worldwide, in perpetuity, in all media and in all means whether presently known or unknown, to the results and proceeds of [Sedgwick's] services, and ... the right to utilize [Sedgwick's] name, likeness and biography in connection with advertising or publicizing

4

the motion picture 'CIAO! MANHATTAN." ( Nov. 4, 2013 Tentative at p. 3)

      ii.    It is Defendant's position that he is the successor-in-interest under 3344.1, as he is the person identified in that statute. No other action must be taken, since the death of Edie Sedgwick occurred approximately 15 years before the statute was signed into law there was no duty to re-open probate.

      iii.    Defendant agrees that there is no real dispute stemming from the court's ruling regarding Plaintiff's rights under the Ciao Manhattan! copyright.

## 3. Disputes Over What the Court Has Already Decided

### a. Plaintiff

Plaintiff disputes the Court's ruling on evidentiary objections 1-4 of Dkt. No. 118-2. Plaintiff maintains that each of the cited paragraphs from Defendant's declaration submitted in support of the notion that Sedgwick had commercial value at the time of her death, lack foundation, have not been properly authenticated, and are inadmissible hearsay. (Nov. 4, 2013 Tentative at p. 4).

### b. Defendant

None.

## 4. Issues Remaining to Be Tried

### a. Plaintiff

Plaintiff's understanding is that of the following claims: (1) Plaintiff's claim for violation of statutory right of publicity pursuant to § 3344.1; (2) Plaintiff's claim for declaratory relief as to the extent of Plaintiff's ownership of the Sedgwick publicity rights under § 3344.1; (3) Defendant's counterclaim for violation of common law right of publicity and (4) Defendant's counterclaim for violation of statutory right of publicity under § 3344.1, only one question remains: what rights, if any, do the parties have under § 3344.1? The Court disposed of all other

5

issues. First, the Court tentatively ruled in favor of Plaintiff on Defendant's common law right of publicity counterclaim, stating that the "common law right, however, does not survive death of the person whose identity was exploited, and is not 'descendible to heirs or assignees.'" ( Nov. 4, 2013 Tentative at p. 8 citing *Giofriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 408 (2001)).  Next, the Court also granted "[Plaintiff] declaratory relief with respect to ownership of Sedgwick's publicity rights within the timeframe covered by [Plaintiff's] December 18, 1970 contract with Sedgwick." (March 20, 2014 Tentative at p. 1).  The Court previously acknowledged that Plaintiff is the owner of all rights conveyed by virtue of contract and by virtue of Plaintiff's copyright in *Ciao! Manhattan*.  (Jan. 20, 2014 Tentative at p. 5).  Plaintiff agrees with the Court's original position on this matter.  To the extent that the Court acknowledged that Defendant's newfound and late brought copyright claim with regard to the "Edie Looking Up" image and the "Wedding Footage," Plaintiff argues that the Court need not address these issues. These claims are not properly before the Court.  Further, Defendant waived his right to assert any such claim because he failed to bring it to the Court's attention until the last possible moment, he supports these new claims with inadmissible evidence, and in any event, the two year statute of limitations challenging Plaintiff's use of these images in his copyrighted film *Ciao! Manhattan* has long since run. Therefore, it is Plaintiff's position that the Court need not even address what seems to be an attempt to request declaratory relief as to copyright ownership of images from Plaintiff's copyrighted film.

     Finally, the Court made clear that in order to address what rights, if any, Defendant has under § 3344.1, that he need to first address with the probate court what affect the probate order has on any successor-in-interest rights he might have under the statute. (Nov. 4, 2013, Jan. 30, 2014 Tentatives).  Defendant has not done this.  Not only did he fail to approach the probate court, he failed to address the Court's concerns on this matter in any of his papers.  It is Plaintiff's position, that the remaining issue as to what rights, if any, Defendant has under § 3344.1, cannot be reached until Defendant has taken the necessary steps to clarify with the proper court the effect of the probate order.  In the event that there is a finding that Defendant does in fact own some

successor-in-interest rights under § 3344.1, it is Plaintiff's position that there remains a triable issue of fact on the extent of the commercial value in Sedgwick's name, likeness and biography at the time of her death. (Nov. 4, 2013 Tentative at p. 6). Plaintiff contends that the entirety of Sedgwick's commercial value stems from Sedgwick's role in *Ciao! Manhattan* and therefore, Plaintiff owns all such rights. Defendant contends that Sedgwick possessed additional commercial value that stemmed from her non-commercial roles in Andy Warhol's experimental art films. It should be noted that all evidence Defendant submitted on this matter lacks foundation is inadmissible. Therefore, until Defendant resolves that he does in fact have *some* successor-in-interest rights, there are no remaining issues to be decided in this litigation.

### b. Defendant

i. As stated above, it is Defendant's position that Plaintiff does not have any rights as successor-in-interest, but that the successor-in-interest takes subject to the contract rights the court has found. Further, Defendant is the successor-in-interest since he is the person identified in 3344.1 as the person with the rights described in that statute.

ii. If the court will resolve this issue at trial, Defendant seeks leave to file a motion to amend his answer to add a defense which Plaintiff is aware, to wit: Plaintiff has never filed a statement as successor-in-interest with the secretary of state. It was Defendant's position when he filed his answer that Plaintiff had the burden to show such filing.

### III. CONCLUSION

The parties respectfully request that Court make final rulings on all that it is able. The parties are prepared to present a plan for navigating any remaining issues at the Pretrial Status Conference.

///
///
///

| | | |
|---|---|---|
| Dated: May 1, 2014 | | GIRARDI | KEESE |
| | By: | /s/ Graham B. LippSmith |
| | | THOMAS V. GIRARDI |
| | | GRAHAM B. LIPPSMITH |
| | | Attorneys for Plaintiff and Counter-Defendant |
| | | |
| | | JURIS DOCTOR CALIFORNIA |
| | By: | /s/ Geoff Conner Newlan |
| | | GEOFF CONNER NEWLAN |
| | | Attorney for Defendant and Counter-Plaintiff[1] |

---

[1] This afternoon, May 1, 2014, Defendant sent Plaintiff a corrupted file with Defendant's statements for the Joint Submission. Plaintiff extracted Defendant's statements, his signature block and electronic signature for inclusion in this document. Plaintiff sent the instant document to Defendant for his final review and authorization to file with Defendant's electronic signature. Defendant failed to respond. Plaintiff, in an effort to comply with the Court's deadline to file the Joint Submission, files the instant document despite Defendant's failure to respond.

**JOINT SUBMISSION**